**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOHN OATES, and
MICHAEL CROHAN on
behalf of themselves and a
class of similarly situated individuals,

        Plaintiffs,

vs.                    Case No. CIV 11-254-MCA/GBW

DONALD DORSEY, ANTHONY ROMERO,
CHRISTINE VALLEJOS, and various
JOHN DOE correctional officers,

        Defendants.

**THIRD AMENDED CLASS ACTION COMPLAINT FOR THE RECOVERY OF
DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS AND INJUNCTIVE
RELIEF**

Plaintiffs bring this complaint for damages caused by the violation of their civil and constitutional rights. Plaintiffs file this complaint under the Federal Civil Rights Act, the New Mexico Constitution, the New Mexico Tort Claims Act and the Constitution of the United States. In support of this complaint, Plaintiffs allege the following:

**JURISDICTION AND VENUE**

1. Jurisdiction and venue are proper in Valencia County and in New Mexico. All of the parties either resided or did business in Valencia County, New Mexico and the acts complained of occurred exclusively within Valencia County, New Mexico.

2. Jurisdiction is also proper in the United States District Court of New Mexico, having been removed by Defendants from the Valencia County District Court.

**PARTIES**

3. Plaintiff John Oates, (hereinafter J.O.) is an individual and former resident of the Los Lunas Penitentiary, Valencia County, New Mexico. Plaintiff J.O. brings this suit on behalf of

4. Plaintiff Michael Crohan is resident of Los Lunas Penitentiary, Valencia County, New Mexico. Plaintiff Crohan brings this suit on behalf of himself and all similarly situated individuals of the Central New Mexico Correctional Facility, (CNMCF).

5. Defendant Donald Dorsey was at all material times Deputy Director of Adult Prisons for the State of New Mexico. Dorsey is sued in both his individual and official capacities.

6. Defendant Anthony Romero was at all material times the Warden of CNMCF. Romero is sued in his individual and official capacities.

7. Defendant Christine Vallejos was at all material times a Deputy Warden of CNMCF. Defendant Vallejos is sued in her individual Capacity.

8. John Doe Defendants are the correctional officers involved in the violation of Plaintiff's civil rights alleged below.

9. All Defendants were acting within the scope of their employment at all material times.

## FACTUAL BACKGROUND: PLAINTIFF J.O.

10. In 2009, Plaintiff J.O. was an inmate in the custody of the Department of Corrections.

11. Towards the end of 2009 Plaintiff J.O. was transferred to CNMCF in Los Lunas to be housed in their Level II facility.

12. J.O. was assigned to work in the kitchen.

13. During this time frame Defendant Anthony Romero was implementing a policy of intimidation and abuse against all inmates within the facility.

14. One example of this abuse occurred when Plaintiff returned from his evening work shift to the Level II facility.

15. Plaintiff and the rest of the kitchen work detail were met by John Doe Defendants wearing masks to conceal their faces and uniforms without identification or name tags.

16. Along with all the men returning from kitchen duty, Plaintiff was ordered to strip.

17. Plaintiff, and other similarly situated individuals were slammed into the wall and forced to remove their clothes.

18. Plaintiff suffered physical injuries to his head when he was slammed into the wall.

19. Upon information and belief, the forced stripping of the kitchen workers took place in the view of security cameras in a hallway of the Level II facility.

20. Plaintiff was forced into the gymnasium where the majority of level II prisoners had also been forced to strip at gun point.

21. When Plaintiff and the other kitchen workers entered the gymnasium inmates were sitting on the floor with their genitals touching the backs of the man in front of them.

22. The prisoners were allowed to remain in their underpants, but were otherwise naked.

23. Plaintiff, along with the other prisoners, was ordered to sit on the floor, spread his legs and bring his body so close to the man in front of him that his genitals were touching the back and buttocks of the prisoner immediately in front of him.

24. Plaintiff, along with the other prisoners, had an individual's genitals forcibly placed on his backside.

25. Plaintiff, along with the other prisoners, was ordered at gun point to hold his hands interlaced behind his head while this was happening.

26. The prisoners were ordered to maintain this extremely humiliating position for some considerable time.

27. If someone did not have the strength to maintain this position, or refused to put his genitals on the man in front, he was thrown against the wall and physically and verbally abused at gun point.

28. Plaintiffs were intimidated to the point they believed they would be shot if they removed their hands from the back of their heads.

29. After approximately thirty minutes Plaintiffs were allowed to take their hands down from their heads and use them to support their weight instead of having to grip the man in front with their naked thighs.

30. Plaintiffs were forced to remain in this position for several hours.

31. Plaintiffs were not allowed to use the bathroom during this ordeal.

32. One prisoner, K.Y. had no choice but to urinate on the man in front of him.

33. Several Plaintiffs were forced to sit in K.Y.'s urine.

34. Upon information and belief Warden Anthony Romero ordered this punishment.

35. Upon information and belief Warden Romero yelled at Plaintiffs informing them they were his "bitches".

36. Upon information and belief Warden Romero threatened Plaintiffs by telling them he could make them go "nuts to butts" anytime he wanted to.

37. John Doe correctional officers wore masks to conceal their faces.

38. Several John Does carried weapons and threatened inmates with them.

39. The Deputy Director of prisons, Defendant Dorsey, was present throughout this event.

40. Defendants described what they were doing as "nuts to butts."

41. Upon information and belief Defendant Dorsey encouraged "nuts to butts" either by failing to intervene, or by actively taking part.

42. In addition to the security cameras, the events described above were captured by Defendants who decided to videotape the abuse.

43. After several hours Plaintiffs were allowed to return to their bunks.

44. After this incident, Plaintiffs were repeatedly threatened they would be placed "nuts to butts" again if they did not comply or show respect to authority.

45. Upon information and belief "nuts to butts" was not an isolated incident but occurred several times to large numbers of the prison population in 2009.

46. At least fifteen Plaintiffs filed written complaints of abuse to prison officials.

47. Several employees of CNMCF knew the inmate complaints had been filed, saw and read the complaints and knew the complaints went unanswered.

48. Plaintiffs handed these complaints to Ms. Bland, an administrative assistant to the warden.

49. Plaintiff's received no response from these written complaints.

50. Instead Plaintiffs were intimidated and threatened with more abuse.

51. Plaintiffs suffered physical and emotional injuries as a result of this abuse.

## FACTUAL BACKGROUND: PLAINTIFF MICHAEL CROHAN

52. Plaintiff restates each of the preceding allegations as if fully stated herein.

53. Plaintiff Michael Crohan (hereinafter "Plaintiff Crohan") was an inmate of CNMCF during the time of the events described above.

54. At all material times Plaintiff Crohan was housed in Level II.

55. Plaintiff Crohan was also subjected to the same incident as described above in the paragraph entitled: Factual Background: J.O..

56. In addition to this incident Plaintiff Crohan was unfortunate enough to have been subjected to multiple incidents where he was forced to sit "nuts to butts".

57. During one incident Plaintiff Crohan, along with other inmates, was forcibly strip- searched in a hallway prior to being placed "nuts to butts".

58. During another incident Plaintiff Crohan, along with other inmates, was forcibly strip-searched in the gymnasium prior to being placed "nuts to butts".

59. On other occasions Plaintiff Crohan, along with other inmates, was forcibly strip-searched in the day room of the housing unit prior to being marched to the gymnasium and placed "nuts to butts".

60. During these incidents CNMCF employees would yell obscenities at inmates and bait them into reacting.

61. Inmates who refused to straddle the person in front were forcibly removed from the line and taken to segregation.

62. After one of the first incidents Plaintiff Crohan filed a grievance complaining of this mistreatment.

63. Plaintiff Crohan also complained personally to Defendant Anthony Romero about the mistreatment.

64. Despite these complaints Defendant Romero continued his policy of "nuts to butts."

65. On several occasions Defendant Vallejos orchestrated "nuts to butts."

66. Plaintiff Crohan received physical, mental and emotional injuries as a result of this treatment.

## CLASS ACTION ALLEGATIONS

67. Pursuant to N.M. R. Civ. P. 23(A) and (B) Plaintiffs bring this action on behalf of themselves and all those persons who were subjected to "nuts to butts" by Defendants.

68. The class is so numerous, joinder of all parties is impracticable. At a minimum, "nuts to butts" occurred on or about June 1, 2009, June 17, 2009, September 15, 2009, December

69. The questions of law and fact are common to all members of the class and include, but are not limited to, whether "nuts to buts" violates the Eighth and Fourteenth Amendments to the United States Constitution.

70. The claims and defenses of the parties are typical for those of the class as a whole. The abuse described above occurred to each member of the class including the named Plaintiffs. Each person was subjected to the abuse as part of a group rather than as an individual.

71. The named Plaintiffs will fairly and adequately protect the interests of the class as a whole. The Plaintiffs do not have interests antagonistic to those of other class members. All class members share an interest in assuring the type of abuse described above does not occur again. Additionally Plaintiffs are represented by counsel who is experienced in civil rights and prisoner abuse litigation and can adequately represent the class as a whole.

72. Prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications and also create a risk of adjudications which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications.

73. Plaintiffs are seeking injunctive and declaratory relief affecting the class as a whole.

**COUNT I: STATE CONSTITUTIONAL CLAIMS –Declaratory and Injunctive Relief**

74. Plaintiffs restate each of the preceding allegations as if fully stated herein.

75. Plaintiffs have a right under Article II Section 13 of the New Mexico Constitution to be free from cruel and unusual punishment.

76. Plaintiffs have a right under Article II Section 18 of the New Mexico Constitution to due process of law.

77. Plaintiffs have a right under Article II Section 18 of the New Mexico Constitution to equal protection of the law.

78. The actions of Defendants described above serve no legitimate governmental interest.

79. The actions described above amount to sexual abuse and harassment reserved for male inmates and as such violate equal protection of the law.

80. The actions above violate contemporary standards of decency in the administration of a prison. They demonstrate deliberate indifference to inmates' constitutional rights, and as such they violate due process of law.

81. The New Mexico Constitution affords greater protection than its federal counterpart under these circumstances. For example, New Mexico's equal rights amendment to Article II Section 18 was intended to supplement and expand the guarantees of the equal protection provision of the Bill of Rights. (See *New Mexico Right to choose/NARAL v Johnson*, 1999 NMSC 5.)

82. Plaintiffs request "nuts to butts" be declared unconstitutional and Defendants be enjoined from engaging in this behavior again.

## COUNT II: CRUEL AND UNUSUAL PUNISHMENT.

83. Plaintiffs restate each of the preceding allegations as if fully stated herein.

84. Plaintiffs have an Eighth Amendment right to be free from cruel and unusual punishment.

85. Defendants' conduct in ordering Plaintiffs to strip and to place their "nuts to butts" amounts to punishment.

86. There is no legitimate governmental interest in forcing inmates to place their genitals on the rear of another inmate.

87. There is no legitimate governmental interest in forcing Plaintiffs to sit in this manner and be physically and verbally abused.

88. Defendants' actions were intentional, willful and wanton.

89. Defendants acted with deliberate indifference to Plaintiffs' constitutional rights.

90. Plaintiffs suffered damages as a result of Defendants' actions including bodily injury, emotional distress and sexual humiliation.

91. Defendant Dorsey had an obligation to stop the unconstitutional conduct as it unfolded in his presence.

92. Defendant Vallejos also had a duty to stop the unconstitutional conduct but instead actively participated.

93. On at least one occasion Defendant Vallejos instigated "nuts to butts".

94. As Warden, Deputy Warden and Deputy Director of Prisons, Defendants Romero, Vallejos and Dorsey engaged in particularly egregious conduct meriting an award of punitive damages.

## COUNT III: EQUAL PROTECTION

95. Plaintiffs restate each of the preceding allegations as if fully stated herein.

96. Plaintiffs have a Fourteenth Amendment right to equal protection of the law.

97. Defendants Romero and Vallejos organized "nuts to butts" exclusively for the male prisoners.

98. Defendants forced the inmates to strip and sit in a line touching each other's genitals because they were male prisoners.

99. "Nuts to butts" was organized and implemented to harass, intimidate, humiliate and degrade the prisoners on the basis of their sex.

100. But for their sex, the inmates would not have been subjected to this kind of abuse.

9

101.     As such Plaintiffs were punished and discriminated against on the basis of their sex.

102.     There was no legitimate governmental interest in such discrimination.

103.     Defendant Romero repeatedly yelled that the inmates they were now his "bitches".

104.     Defendant Romero's desire to make the inmates his "bitches" is an abuse of governmental authority for the purpose of his own sexual gratification.

105.     Plaintiffs suffered damages as a result of Defendants' actions including bodily injury, emotional distress, sexual humiliation and sexual harassment.

106.     The action of the Defendants was intentional, willful and wanton, as they knew they were engaged in an outrageous act of sexual humiliation.

## COUNT IV: SUBSTANTIVE DUE PROCESS VIOLATIONS

107.     Plaintiffs restate each of the preceding allegations as if fully stated herein.

108.     Plaintiffs have a Fourteenth Amendment right to due process.

109.     Plaintiffs have a fundamental right to bodily integrity.

110.     Forcing inmates to touch each other's genitals under threat of physical force amounts to criminal sexual contact by use of force and coercion and is a crime in New Mexico.

111.     Such a crime committed by Defendants violates Plaintiffs' fundamental right to bodily integrity under the Fourteenth Amendment.

112.     Forcing inmates to go "nuts to butts" is an abuse of governmental power which shocks the conscience and therefore violates the Fourteenth Amendment.

113.     Plaintiffs suffered damages as a result of Defendants' actions including bodily injury, emotional distress, sexual humiliation and sexual harassment.

114.     The action of the Defendants was intentional, willful and wanton, as they knew they were engaged in an outrageous act of sexual humiliation.

## COUNT V: PROCEDURAL DUE PROCESS

115.  Plaintiffs restate each of the preceding allegations as if fully stated herein.

116.  Plaintiffs have a procedural right to due process of law.

117.  Defendants punished Plaintiffs by stripping them and lining them on the gymnasium floor with their genitals touching the man in front of them.

118.  This punishment was levied against a group of people rather than any individual wrong doer.

119.  This punishment took place without notice.

120.  After the punishment took place, Plaintiffs filed a formal complaint.

121.  The complaint went unanswered.

122.  Some of the complaints were destroyed.

123.  Plaintiff was therefore denied any pre-adjudicatory or post-adjudicatory due process of law.

124.  Plaintiffs are damaged not only by the abuse of governmental power but also by the inability to meaningfully grieve such abuses. Under such circumstances Plaintiffs remain in fear of future abuse unchecked by procedural due process of law.

## COUNT VI: FEDERAL CONSTITUTIONAL CLAIMS –Declaratory and Injunctive Relief

125.  Plaintiffs restate each of the preceding allegations as if fully stated herein.

126.  Plaintiff J.O. and other similarly situated prisoners are potential victims of repeated episodes of the above described conduct.

127.  Defendants have denied "nuts to butts" violates Plaintiffs' constitutional rights.

128.  Defendants have destroyed Plaintiffs' attempts to grieve their mistreatment.

129.  Plaintiffs are therefore subject to repeated episodes of mistreatment.

130. Plaintiffs request the above mentioned conduct be declared unconstitutional and seek an injunction prohibiting the Defendants from lining people in a manner where they are forced to touch each other's buttocks or genitals.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

1. Assume jurisdiction over this matter.
2. Certify this action as a class action pursuant to Rule 23.
3. Declare the practice of placing inmates "nuts to butts" violates state and federal constitutional rights.
4. Declare that Defendants have violated Plaintiffs' state and federal constitutional rights.
5. Enjoin Defendants from placing inmates in a manner where they are forced to touch each other's buttocks or genitals.
6. Award compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for bodily injury and emotional harm.
7. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.
8. Reasonable costs and attorney's fees incurred in bringing this action.
9. Such other and further relief as the Court deems just and proper.

Respectfully submitted:

/s/ Matthew E. Coyte             /s/ Jack Bennett Jacks
MATTHEW COYTE                    Jack Bennett Jacks
Attorney for Plaintiffs          Co-Counsel for Plaintiffs
1000 2nd Street NW    107 Bryn Mawr S.E.
Albuquerque, NM 87102            Albuquerque, NM 87106
(505) 244-3030                   Tel: (505) 463-1021

I HEREBY CERTIFY that on the 29th day of September, 2011, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means:

Steve French
Ronald Gould
French & Associates, P.C.
500 Marquette, Suite 500
Albuquerque, NM 87102

/s/ Matthew E. Coyte
Matthew E. Coyte